Council, Kendra Matthews with Ransom Blackman on behalf of Petitioner James Cheney. The briefing sets out the arguments in this case, and it sets out, I think, two key disputes. One is on the scope of the Let me ask you what's bothering me on your case. Yep. Prejudice. This has happened to all of us as trial lawyers. The other side does something objectionable, objection, Your Honor, after this trial, and the judges never give it to us. All they give us is an admonition. In this case, when defense counsel did object, he did object. The only argument, really, is that he should have objected sooner. But when he did object, he got an admonition to the jury. And had he objected sooner, the only difference would be that the appellate court would have been allowed under State law to overturn the mistrial decision instead of treating it as waived. But I can't see why there's any reason to think that the trial judge would have granted a mistrial. He didn't grant the mistrial when the objection was made at the end of the argument. He granted an admonition. And that's all judges ever do, as far as I've seen. I can't see why we should think he would have granted a mistrial had the objection been made immediately. I don't think, Your Honor, the only issue under the prejudice standard in the post-conviction context is would have the court granted a mistrial. I agree that it is one issue, and it is one for which we struggle with, based on the reason you've said. But in Oregon, a competent trial counsel knows that if he doesn't get up and object, he waives that mistrial issue. If he doesn't get up and say, yes. Kennedy, let's assume that the lawyer should have objected immediately and didn't. Still, there are two prongs to the ineffective assistance, falling below the standard and prejudice. Yes. Even if we assume that he should have jumped up and objected immediately. I don't see the prejudice. And to get to that point, Your Honor, what we would contend is that if he gets up at that moment, he stops the bell from ringing. Which moment are you talking about, when Troxell vouches for himself or when attorney vouches for Troxell? What are you talking about? I apologize, Your Honor. I assumed that the Court was directing me to the closing argument. And so the final argument by the prosecutor that was way out of line. I'm speaking of the closing argument. If he gets up during closing argument, which we know this counsel was willing to do because he got up and objected at other moments in closing argument, he stops that bell from being rung. And the question is whether there's a reasonable probability that if he gets up at that moment, the result of the trial is different. One is it would have been different had the judge granted a mistrial. Another way that there's a reasonable probability, we contend, that the result would have been different is if the jury had returned a different verdict. This was a 10-2 verdict, we know. We know that this is a case that the prosecutor stated on the record before trial, this is a 50-50 case. The witnesses were two children and then supporting witnesses of them, and the defendant. It was the traditional credibility contest. And the prosecutor was allowed to state in its entirety, my job is to tell you the truth, the police officer's job is to tell you the truth, the defense counsel's job, according to the post-conviction trial court, characterized as the defense counsel's job is to suborn perjury. If the defense counsel would have gotten up immediately and said, Your Honor, I have a matter for the court, and the court, as is often the case, says, I'm not going to give you that moment now, would have immediately issued an admonition, alerting the jury to the fact that they should not be accepting that principle that was stated without objection, when a couple of transcript pages later, the State says, I was speaking to my sister last week, and defense counsel Paulson said, I'm   And then the court pops up and says, Your Honor, objection, fact's not in evidence. So there's no tactical reason not to object. And we contend that, one, yes, there is the mistrial issue, but I think the Court has articulated our problems. But also, the but-for standard, we think, is broader than that. My problem is slightly different than Judge Kleinfeld's, because we're not applying Strickland directly. We're looking at what the State court did and saying, well, was the State court's application of Strickland objectively unreasonable? Not even was it wrong, but was it objectively unreasonable? And when I look at the Supreme Court precedents, both applying Strickland, which in resignance, the courts had the State courts have a lot of wiggle room, and at the Supreme Court's vouching cases like Darded and Young, I'm having trouble seeing why what the State court did was objectively unreasonable. So maybe you could address that for me. Sure. And I think, Your Honor, practitioners always struggle with what objectively unreasonable is. We know it's beyond wrong, but I think that in the Ninth Circuit case, Arpaccio – I'm butchering that pronunciation, but it is cited in the briefs – it says it needs to be incrementally more than wrong. I think here, we believe we have that. We think the magistrate articulated a strong basis for why we have that. Strickland is the standard. The question of prejudice is one that is broader, as I've just articulated to the Court. And despite the fact that Petitioner has always articulated that broader basis for prejudice, the courts have always, the State court, has always come back to, you know, you weren't going to get the mistrial. The judge, the trial judge heard the objection, you weren't going to get the mistrial. And therefore, the court of – I believe the trial judge in the post-conviction context said the statements were wrong, I agree they were wrong, but the court of appeals said you didn't get a fair – or it didn't impact your ability to have a fair trial on direct appeal. I agree. And our position is that is an unreasonable application of Strickland, because on the direct appeal, the court of appeals was reviewing as a matter of plain error whether or not it was beyond dispute that the failure to object in the prosecutor's case was a matter of plain error, and the court of appeals was reviewing as a matter of plain error whether or not the statements were denied the fair trial. So we think that the prejudice standard that was applied by the State court trial post-conviction judge, which is the only opinion you have that you look back to, conflated the prejudice standard sufficiently that that's a basis for this Court to look at it and say we're applying Strickland under the limited view that we can give under 2254, but we believe that it was greater than simply wrong, it was objectively unreasonable. And that's our contention. I think the other point that I would point out regarding Detective Troxell's case is that the issues have been briefed on that in terms of whether it's subject to the certificate of appealability or whether it in fact was something that required an objection. We do note that Respondent states in its brief it was proper argument to state during closing argument that the detective's job was to ferret out the truth and present only true cases. We would dispute that. We believe that statement in closing was improper at a minimum and should factor into the prejudice. Kennedy, I'll tell you what bothers me, counsel. If you take Troxell's testimony out and you take counsel's, the DA's, vouching for it out, isn't there enough here to convict your man when he says himself when he takes a stand, I gave the child a blubbery kiss? No, Your Honor. Because it has to be under Oregon law for a sexual purpose. And do you think the jury can't reason that if the defendant gets on the stand and admits giving a blubbery kiss to a 10-year-old child, that there is some sexual reason for it? I think if the question was sufficiency of the evidence, could a jury draw that inference, then I believe a jury could on that single count. There were four counts, and so it wouldn't impact the entire case. But beyond that, I think the question is not here. There was a 10-2 verdict, and all it needed was one changed vote to change the outcome of the entire case. And so what the jury had the ability legally to do, when you have two witnesses and, you know, a credibility contest, they have the ability to make a decision. But whether or not they would have made it here, if there's a reasonable probability, is what we dispute. I have 26 seconds, I'll reserve. Thank you. May it please the Court, Caroline Alexander for Respondent. That's my exact argument, prejudice. Judge Kleinfeld, I think that you've articulated what is the correct analysis under the prejudice problem of Strickland, and that's what the district court, Judge Hogan, found as well, that had counsel objected immediately, the court would have granted a mistrial, and there just isn't any evidence of that. The court considered the motion for mistrial on the merits, decided to give a curative instruction under Oregon law. The court has broad discretion to make that decision, and in fact, mistrials are disfavored under Oregon law. I'd like to talk a little bit about this other prejudice angle. Petitioner's argument is this. Well, well, yes, we understand that, and we don't do so good under that analysis. But let's look at it another way. If counsel had objected, the jury wouldn't have heard the entirety of those improper comments. And absolutely, there is no doubt those comments were improper. Our court of appeals has found that. The State doesn't argue differently. And including the comment about Trostle II, let's just include all of those comments under the improper rubric. But had the jury heard the entirety of the argument, there's a reasonable probability that there would have been an acquittal. That has to be the complete analysis. The problem with Petitioner's argument is on page 4 of the reply brief, and Petitioner is quoting the trial memorandum in front of the post-conviction court. And she says this toward the top of the page. It is impossible to say that the vouching by the State did not influence at least one juror. Thus, the vouching had a tendency to affect the trial. That simply isn't the standard. That has to be the standard for her to win. I agree with you. That's not the standard. But I don't know that that should be treated as though it's a concession or anything. Oh, no, no, no. I'm not saying it's a concession, Your Honor. Absolutely. I've got something else that's bothering me. Certainly. I don't know if this gets anywhere under the EDPA deference to the State court's reasonableness of the decision standard. But it just bothers me. You've got a case that is the subject of really unethical conduct by the State. And you've got a case that is the subject of really unethical conduct by the prosecutor. Seriously unethical conduct. And what's more, it looks as though it's probably motivated by desperation to win, where the evidence isn't quite as solid as the prosecutor would like. And all that the judge gives is an admonition. The judge doesn't tell the jury, look, the prosecutor knows less than you do. He probably never heard any of the defense evidence until you did. All he heard was what the police told him and maybe what the witnesses told him or the social worker or something. He just heard one side. You heard both sides. So he knows less than you do. And him telling you what he thinks, and he's a good guy, and he's for truth, and the defense lawyer is a sleaze, and he's just for winning, even if he has to put perjured evidence on, all that is unethical. Judge didn't say anything like that. Instead, he just said the attorney's statements and arguments are not evidence. If your recollection of the evidence is different from the attorney's recollection, you must be relying on your own memory. Well, that admonition is directed to misstatements of what the evidence is. It really isn't directed to the problem of the prosecutor stating his personal conviction and his belief that prosecutors are more honest folks than defense lawyers. Well, let me – let me – About the adequacy and whether the inadequacy of that should be factored in here, considering prejudice. Two points, Your Honor, and I do think we need to talk about that. We need to address that. First of all, the way that the State views this curative instruction issue is that it's a separate claim. All the way through, Petitioner has made that argument, but it's never been raised as a claim. Now, counsel should have a – It was in the trial petition. I had this question about State procedural law. So that issue was in the trial brief to the State habeas court, correct? In the memoranda, yes. But it wasn't in the petition. Correct. Now, in the Ninth Circuit, we would take the language in the trial brief perhaps as he motioned to extend the claims in the petition. Now, does that happen in the – in State court, or in fact, is that just not raised? It's not right, Your Honor. Okay. Not in State post-conviction law, because under Bowen v. Johnson, that's cited in the 28J letter, it must be in the petition. So it – it may be, just as a procedural matter, the – if, in fact, the Petitioner has argued that in a memoranda, he may then choose to amend his petition to add that claim, or the court may allow that amendment, you know, other than, for example, the eve of trial or the day of trial. The court may allow that, but it still has to be in the petition, and that's Bowen v. Johnson, and that's very well-established Oregon law. It just doesn't quite work the same way. So if, in fact, you have a claim in the petition – I mean, in the memorandum rather than the petition, unless the court considers it anyway or the State somehow treats it as being in the petition, I mean, there's some aberrations of that general rule, but not here. There's none of that. So adequacy of the petition is defaulted? Yes. Or adequacy of the amendment. Yes. Yes, Your Honor. That's completely defaulted. It may be that it's adequate, because he did say that personal beliefs asserted by counsel are not to be considered, though he didn't say why. Well, and that's my second point, Your Honor, about the instruction itself. So, you know, procedural things aside about that, I think the court really needs to go back and look at the context of this entire trial. First of all, yes, indeed, they were child victims, but they were 10 and 13. They weren't 4 and 5. And this little girl, if you go back and read her testimony, is incredibly articulate, incredibly solid in her testimony, and in fact says, I'll remember this until I'm 30. Also in the context is this sort of baiting by the defense and rebuttal by the prosecution. There's this whole theme of the defense that my guy's being railroaded by the State, by the detective, by the prosecutor. They'll prosecute anything. They'll do anything for a conviction. And so you have this theme sort of running through the trial. Well, a prosecutor can't respond to that kind of statement. No, absolutely not. It's unethical. Absolutely not. The prosecutor was wrong in responding to that, and I'm not arguing otherwise. I'm simply saying you have to look at prejudice in the context of what was going on. So in closing, the prosecutor doesn't make any objectionable statements in her closing initially. Of course. She saves it for rebuttal when the defense can't do anything about it. Except that, except that in defense's closing, he's the one who says there's egos involved here. That's the problem. They're out for a conviction to save their egos. That's what baits the prosecutor into saying this stuff that's absolutely objectionable. And so, again, I'm not trying to say that that's a perfectly fine thing to do by the prosecutor, because it's not. And the trial court said to the prosecutor, you can't do that. It doesn't matter if they slam your ego. You can't do that. Trial court was very clear about that. But what I'm saying is in the context of the prejudice analysis you have. Kennedy, outside the presence of the jury. Yes. Yes. In the motion for mistrial, yes. Yes, Your Honor. Because the trial court, as well as the court of appeals, you know, found those comments improper. But in the context of prejudice, again, you still have to look at that to say, here the jury hears personal beliefs all over the place. They get the curative instruction that says you can't consider personal beliefs. And, in fact, defense counsel at the transcript, which is Exhibit 3, CR 2, at, I believe, 1240, says to the jury, follow the instructions, look at the evidence, that's what you need to do in this case. And that's what the trial court reinforced in the curative instruction. So I think in that big picture of what was going on, that's why the Oregon court of appeals said, in the context of a due process claim, not a counsel claim, said, we can't say that that instruction was so inadequate as to render the trial unfair or prejudicial. And that court of appeals opinion is what informed the postconviction court's decision on the counsel claim. And I admit the postconviction's analysis is not the best. But I think what the Court is saying is that this is what the court of appeals found. That informs my decision. There's simply just no prejudice here. Thank you, counsel. Thank you. Your Honors, I just wanted to direct your attention to the Bowen case that is brought up in the letter. It does have his progeny Abbott v. Baldwin, which is 178 ORAP 289. And that's a case in which the Court said claims traceable to the petition fall within the scope of it. And we would ask the Court to look at, for instance, Exhibit 25, Respondent's Brief at the court of appeals in postconviction. These issues were always treated as vouching issues as a whole. And I believe in that context the memoranda and the arguments that this is not a separate claim regarding the curative instruction, it is part of the dispute regarding how counsel handled vouching issues. Thank you. Thank you, counsel.
judges: Kleinfeld, Bea, Ikuta